**ERIE R. CO. v. RANDALL.**

No. 6249.

Circuit Court of Appeals, Sixth Circuit.

May 15, 1933.

C. O. Chandler, of Cleveland, Ohio (McGowan, Foote, Bushnell & Burgess, of Cleveland, Ohio, on the brief), for appellant.

H. H. Marshman, of Cleveland, Ohio (Anderson & Lamb and D. F. Anderson, all of Cleveland, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

PER CURIAM.

The appellee was employed by appellant as a switchman in its yards at Marion, Ohio. On the night of July 27, 1931, while engaged with his crew in moving a cut of cars over an interchange track between the appellant's yards and the yards of the Pennsylvania Railroad Company, the engine of his train ran into the rear end of a train operated by the Big Four Railroad, with the result that he was thrown from the top of a car and injured, for which he sued and recovered damages. The sole question before us is whether there was substantial evidence of negligence on the part of the appellant to submit to the jury.

Appellant contends that the Big Four train was wrongfully on the interchange track. It relies upon a clause in its contract with the Big Four Company providing that the track should be kept open "as a means of ingress and egress for the Erie Company's engines and cars in delivering and receiving cars from the Pennsylvania Company in interchange," and also upon the testimony of members of the crew that they had never seen or at least had not seen for many years any Big Four engines or trains on this track. We do not think either the contract in question or the evidence of the witnesses relied upon can be construed as relieving those in charge of the train of anticipating the probable occupancy or use of the track by other trains. There was evidence to the effect that it was not possible for the Big Four train to go upon the track unless "let in" by the tower man who controlled the block for that track and for interchange track No. 2. Some evidence was offered, it is true, to show that after passing the block controlled by the tower man entrance upon the track was effected through a hand switch. Whether the switch was open or closed on this occasion does not appear. In any event, the track was accessible to the train. There was no proof as to why the train was there. We cannot say as a matter of law that its occupancy of the track could not reasonably have been anticipated.

So far as negligence is concerned, it is apparent from the record that the interchange track was frequently used, that there was a sharp curve in the track which prevented the engineer from seeing the Big Four train, and that the fireman could have seen it had he been on his side of the engine keeping a lookout. Appellant seeks to excuse the fireman on the ground that it was necessary to put in a fire at that point. We do not think the evidence requires that conclusion. The fireman in fact was not putting in coal but was "digging" it down from the tender. The track was straight for a distance of more than 800 feet before reaching the curve and for several hundred feet after turning it. Though the train was moving on an up-grade, the circumstances tend to show that the fireman could have maintained a lookout rounding the curve. He "had been looking ahead until immediately before" he reached the curve. He might have put in coal to raise the steam that was needed before reaching that point, which was obviously dangerous, or he might have waited until the curve was rounded and until the engineer could see. In these circumstances we think there was evidence of negligent failure to maintain a reasonable lookout.

The judgment is affirmed.